**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Crystal Irvine,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-20-01086-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Crystal Irvine's appeal from the Commissioner of the Social Security Administration's (SSA) denial of social security disability benefits. The appeal is fully briefed (Doc. 12, Doc. 15, Doc. 16), and the Court now rules.

**I.     BACKGROUND**

The issues presented in this appeal are whether substantial evidence supports the Administrative Law Judge's (ALJ) determination that Claimant was not disabled beginning on April 19, 2016 and whether the ALJ committed legal error in its analysis. (Doc. 12 at 1–2; AR 17, 197, 212).

    **A.     Factual Overview**

Plaintiff was born in December 1982 (AR 48) and earned a bachelor's degree in 2008 (AR 50). She has past relevant work experience as receptionist, quality assurance manager, mortgage clerk, and customer service representative. (AR 30). Plaintiff filed her social security disability claim on June 26, 2016, alleging disabilities including dissociative identity disorder, depression, anxiety, and fibromyalgia. (AR 17, 218). An ALJ denied

Plaintiff's claim on May 22, 2019. (AR 32). The SSA Appeals Counsel denied a request for review of that decision and adopted the ALJ's decision as the agency's final decision. (AR 1).

**B.     The SSA's Five-Step Evaluation Process**

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" (RFC). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant]

can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### C.   The ALJ's Application of the Factors

Here, at the first step, the ALJ concluded that Claimant had not engaged in substantial gainful activity since the alleged onset date of her disability. (AR 19).

At the second step, the ALJ determined that Plaintiff's fibromyalgia, hypertension, thyroid disorder, borderline personality disorder, major depressive disorder with psychosis, anxiety disorder, and alcohol dependence constituted severe impairments under 20 C.F.R. 404.1520(c). (AR 19).

At the third step, the ALJ determined that Claimant's impairments did not meet the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 21). After evaluating Claimant's RFC, the ALJ concluded that Plaintiff could perform light work as defined in 20 C.F.R. 404.1567(b) "except she is able to perform simple routine work involving simple work related decisions and simple instructions, involving no public contact, can have occasional contact with coworkers, and is unable to drive as a work responsibility." (AR 24).

At the fourth step, the ALJ found that Plaintiff is unable to perform past relevant work. (AR 30).

At the fifth and final step, the ALJ concluded that given Plaintiff's age, education,

work experience, and RFC, a significant number of jobs existed in the national economy that she could have performed. (AR 24). Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 31).

## II.  LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

Plaintiff raises three claims of error: (1) the ALJ improperly discounted the opinion of Plaintiff's examining doctor, Dr. Brent Geary, PhD; (2) the ALJ improperly discounted Plaintiff's testimony and the testimony of Plaintiff's husband and mother-in-law; and (3) the ALJ erred by accepting the testimony of a vocational expert based on an incomplete hypothetical question. The Court addresses each in turn.

### A. Medical Evidence

First, Plaintiff argues the ALJ erred by assigning "little weight" to the opinion of

Dr. Geary, who examined Plaintiff on September 14, 2017 and concluded that "[g]iven the multiplicity and pervasiveness of [Plaintiff's] problems, it is difficult to conjure a rationale whereby she would be able to sustain a job on a consistent basis." (AR 910). The ALJ addressed Dr. Geary's opinion as follows:

> The undersigned assigns little weight to Dr. Geary's opinion as it is generally inconsistent with his own assessments, primarily based on [Plaintiff's] own subjective allegations, and inconsistent with the longitudinal record. Dr. Geary determined that through the administration of the Wechsler Adult Intelligence Scale-IV, the claimant had a full scale IQ of 99, indicating average intelligence. Further, on the Wechsler Memory Scale-IV, it was determined that [Plaintiff] had normal results in all subareas of memory and overall. The record also indicates that [Plaintiff] has been able to maintain eye contact with others. She has also generally exhibited insight and judgment in the normal to fair range with some less than frequent abnormalities. Accordingly, based upon the inconsistencies inherent in his testing, evaluations, and assessments, the undersigned assigns little weight to the opinion of Dr. Geary.

(AR 29) (citations omitted).

Under the circumstances of this case, an ALJ may reject the opinion of an examining doctor by offering clear and convincing reasons supported by substantial evidence in the record. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). The ALJ met this standard here, and Plaintiff's arguments to the contrary are unpersuasive.

First, relying on *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194 (9th Cir. 2008), Plaintiff argues the ALJ erred by rejecting Dr. Geary's opinion merely because he recorded Plaintiff's subjective complaints. (Doc. 12 at 10). In *Ryan*, an ALJ discounted the claimant's psychiatric assessment after concluding that the assessment was "based more upon the claimant's subjective complaints which are not fully supported in the record." *Id.* at 1198. The Ninth Circuit disagreed and noted that in addition to recording the claimant's subjective complaints, the psychiatrist also "recorded several of his own clinical observations," including that the claimant's "[b]ehavior and mannerisms [we]re somewhat odd"; "[s]he [wa]s easily agitated and appear[ed] to be very angry"; and her affect was "anxious, distraught, nervous, shaky, and edgy." *Id.* at 1199. The court held that "an ALJ

does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations" *Id.* at 1199–20. The court further noted that "nothing in the record to suggest[ed] that [the psychiatrist] disbelieved [the claimant's] description of her symptoms, or . . . relied on those descriptions more heavily than his own clinical observations in reaching the conclusion." *Id.* at 1200.

Unlike *Ryan*, here, Dr. Geary's report did rely more heavily on Plaintiff's descriptions than his own clinical observations. Indeed, Dr. Geary's ultimate conclusion seems to rely on little to none of his own clinical observations. Dr. Geary's report indicates that Plaintiff "arrived 15 minutes early for her appointment" and "maintained a somber but involved demeanor throughout the time required to complete the assessment process." (AR 903–904). Dr. Geary noted that Plaintiff's "[f]acial expression was unremarkable," "eye contact and attention span were satisfactory," "motor level was normal," and her "speed of speech was normal and associations were logical." (AR 904). He further noted that Plaintiff "appeared mildly tense but she was able to focus on topics at hand," and "there were no observed difficulties with judgment." (AR 904). Further, as both Dr. Geary and the ALJ acknowledged, most of Plaintiff's test results were within normal limits. (AR 19, 910).[1]

Yet, Dr. Geary concluded that Plaintiff would not be able to sustain a job on a consistent basis based on a review of records from other medical providers and other information of which Plaintiff was the "sole source." (AR 904). Under these circumstances, the ALJ did not err by considering that Dr. Geary's opinion was based on Plaintiff's own subjective allegations. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (holding that an ALJ articulated sufficiently specific and legitimate reasoning for rejecting a treating doctor's opinion where the opinion was "based almost entirely on the

---

[1] Plaintiff argues that these tests, such as IQ and Wechsler Memory Scale-IV, are inconsequential because Plaintiff's disabilities are the result of personality disorders rather than cognitive dysfunction. (Doc. 11). But this argument does not negate the fact that Dr. Geary's ultimate conclusion was not supported by the tests he conducted. In other words, Plaintiff performing within the normal range on cognitive functioning tests does not support Dr. Geary's finding of severe personality disorders.

claimant's self-reporting" and the opinion did not offer "any independent analysis or diagnosis").

Next, Plaintiff argues that the ALJ's statement that Dr. Geary's opinion was inconsistent with the longitudinal record is not supported by substantial evidence. (Doc. 12 at 11). In support of this argument, Plaintiff cites brief statements from Dr. Douglas Stockwell, M.D., and Dr. Brent Nadella, D.O., which state that Plaintiff is unable to drive or work due to her medical condition.[2] (AR 345–46, 818). But the ALJ gave sufficiently specific and legitimate reasons to discount the statements of Drs. Stockwell and Nadella. Specifically, the ALJ noted that these opinions "are based in part upon the claimant's alleged black outs which have not been substantiated by the objective medical evidence." (AR 30). Further, the ALJ stated that these opinions were inconsistent with the fact that Plaintiff has "generally exhibited intact concentration," "has been assessed as having an intact recent and remote memory," and her ability to "engage in hobbies such as caring for her pet, going on vacation, making art, and watching television." (*Id.*). The ALJ appropriately considered these factors, which are supported by the record, to determine how much credit to afford opinions the contrary. *See Ruckdashel v. Colvin*, 672 Fed. App'x 745, 745–46 (9th Cir. 2017) ("The ALJ provided specific and legitimate reasons . . . by stating that [an] opinion was conclusory, contradicted by the objective medical evidence, and relied heavily upon [the claimant's] subjective reports regarding the severity of her disability.").

Plaintiff also asserts that "the longitudinal record is voluminous and full of examples" of serious symptoms resulting from Plaintiff's depression and anxiety. (Doc. 12 at 12). But "[e]ven when the evidence is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Here, the ALJ's findings are supported by the record and the Court does not find that the record evidence pointing in the opposite direction compels a conclusion

---

[2] Plaintiff attributes one of these letters to Dr. David Engstrom, D.O., but it appears that Dr. Nadella signed the letter rather than Dr. Engstrom. (AR 818).

contrary to the ALJ's.

In sum, the ALJ did not err by affording "little weight" to Dr. Geary's opinion.

### B. Testimonial Evidence

#### 1. Plaintiff's Symptom Testimony

Plaintiff next argues the ALJ erred by discounting Plaintiff's subjective symptom testimony. The Court disagrees.

The Ninth Circuit has established a two-step analysis for an ALJ to determine whether to credit a claimant's subjective symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1014–15). If the claimant presents such evidence, the ALJ then evaluates the claimant's subjective complaints. *See id.* "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Instead, an ALJ must provide "specific, clear, and convincing reasons" for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

Claimant testified that she could sit in a chair for 30 minutes to two hours at a time, stand for 30 minutes to an hour at a time, walk about a mile at a time, and lift 10 to 14 pounds. (AR 64–65). She further stated that she attempts to do chores, but these attempts are often unsuccessful due to her anxiety, and she does not go grocery shopping. (AR 65).

At the first step, the ALJ determined that "[C]laimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 25). At the second step, however, the ALJ determined that "[C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*).

After a considerable discussion of the record evidence in this case, the ALJ

concluded:

> It follows that in consideration of [Plaintiff's] symptoms associated with . . . borderline personality disorder, major depressive disorder with psychosis, anxiety disorder, and alcohol dependence, and the record hearing, [Plaintiff] is generally able to perform work at the light exertional level. Considering that [Plaintiff] has been able to understand health care instructions, has been able to perform most of the activities of daily living, has intact concentration, and almost completed her Master's degree, she is able to perform simple routine work involving simple work related decisions and simple instructions. Due to the claimants past suicidal ideations, reported hallucinations, and intermittent decreased mood and affect, [Plaintiff] can have no public contact. However, as [Plaintiff] has been able to attend events at her son's school, has been able to go to Goodwill to shop, has gone on vacations, has taken in her cousin's family to live with her, and has [a] positive relationship with her family, [Plaintiff] can have occasional contact with co-workers. In accepting [Plaintiff's] statements that she experiences panic attacks when driving and the below opinions, [Plaintiff] can perform work which does not have driving as a work responsibility.

(AR 28).

Relying on *Garrison*, Plaintiff argues that the ALJ erred by selectively citing her more normal psychiatric records to "reject [her] testimony merely because symptoms wax and wane in the course of treatment." *See* 759 F.3d at 1017. (Doc. 12 at 14). Plaintiff further argues that the ALJ erred by relying on evidence of her daily activities to conclude that she was capable of working full-time. *See id.* at 1016 ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

The ALJ, however, did not discount Plaintiff's symptom testimony "merely" because her symptoms waxed and waned over time or because she could complete some chores during the day. "The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also* 20 C.F.R. § 404.1529(a) ("In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you.").

The ALJ considered these factors here, and Plaintiff's improvement during the course of treatment and completion of daily activities were but two factors in a comprehensive analysis. The ALJ noted that although Plaintiff testified that she had difficulty recalling information, she had normal results in the subarea of memory on the Wechsler Memory Scale-IV and that she had been generally able to recall her personal and health history. (AR 26). Further, contrary to her testimony that she was unable to concentrate, understand information, and complete tasks, the ALJ cited record evidence indicating that Plaintiff had exhibited a normal or coherent thought processes and had been able to understand health care and discharge instructions and engage in conversations and answer questions appropriately. (AR 26). The ALJ further noted that although Plaintiff alleged that she had hallucinations since her youth, she had been able to "maintain full time employment, get a Bachelor's degree, and almost finish her Master's degree." (AR 27). Further, the ALJ acknowledged that Plaintiff had been previously voluntarily hospitalized for psychosis and attempting suicide in 2016, but has not had required hospitalization since then and commonly denied suicidal ideations. (AR 27). Considering these findings together, which are supported by substantial record evidence, the ALJ rejected Plaintiff's subjective symptom testimony. The ALJ did not err by doing so. *See Andrews*, 53 F.3d at 1039.

**2.     Lay Witness Testimony**

Next, Plaintiff argues that the ALJ improperly rejected the testimony of Brent Irvine, Plaintiff's husband, and Denise Irvine, Plaintiff's mother-in-law.

Mr. Irvine completed a questionnaire describing Plaintiff's limitations. He stated that due to Plaintiff's illness, she could not drive, work, be social with groups of people, or control food-related urges. (AR 247). He further stated that Plaintiff had vivid nightmares that prevented her from sleeping and had memory issues that prevented her from paying bills or remembering to turn off the stove. (AR 247–49). The ALJ assigned "little weight" to this assessment, reasoning as follows:

> [Plaintiff's] husband . . . submitted a Third Party Function report in which he detailed that [Plaintiff] exercised regularly, han[g]s out with her friends, cares for her son, but has difficulty paying attention for longer than thirty minutes, following instructions, and handling stress. Mr. Irvine lacks the medical training necessary to make exacting observations as to dates, frequencies, types, and degrees of medicals signs and symptoms or the frequency or intensity of unusual mood or mannerisms. However, based upon his relationship to [Plaintiff] and consistent observations, the undersigned assigns little weight to his assessments.

(AR 30) (citation omitted). The ALJ did not specifically address the questionnaire completed by Plaintiff's mother-in-law, which also stated that Plaintiff suffered from memory issues and was unable to complete tasks due to lack of focus. (AR 304–06).

The applicable regulations require the ALJ to consider testimony from a claimant's family and friends. *See* 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3). The regulations, however, "do not require the ALJ to provide express reasons for rejecting testimony from each lay witness." *Molina*, 674 F.3d at 1114 (clarifying that contrary to the statement in *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), that "[i]f the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness," an ALJ is not required to "discuss every witness's testimony on a individualized, witness-by-witness basis").

Plaintiff argues that the ALJ improperly required Mr. Irvine to have medical expertise in order to comment on Plaintiff's ability to perform activities. (Doc. 12 at 17). The Court, however, does not read the ALJ decision as requiring Mr. Irvine to have medical expertise. Rather, the ALJ stated that she was not relying on Mr. Irvine's conclusions regarding Plaintiff's medical conditions, which would require medical expertise. Nor does

it appear that the ALJ discounted Mr. Irvine's statement in its entirety. Instead, the ALJ considered Mr. Irvine's relationship to Plaintiff and determined that Mr. Irvine's statements merited "little weight" when considered in light of the remaining evidence. Further, because Plaintiff's mother-in-law's statements were similar in nature to Mr. Irvine's, the ALJ did not need to specifically address her testimony to afford it little weight. *See Molina*, 674 F.3d at 1114.

But even assuming the ALJ's decision to assign little weight to these opinions was erroneous, the Court concludes that any error was harmless. *See Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015); *Johnston v. Astrue*, No. CV 11-8121-PHX-JAT, 2012 WL 3108838, at *11 (D. Ariz. July 31, 2012) (applying harmless error review to an ALJ's disregarding of competent lay witness testimony). The limitations and disabilities contained in these questionnaires were consistent with Plaintiff's own testimony, which the ALJ discounted for reasons supported by substantial evidence. At best, the lay witness testimony corroborates Plaintiff's properly discredited testimony, and, accordingly, the Court finds that this evidence would not have changed the ALJ's disability determination. *See Marsh*, 792 F.3d at 1173 ("ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination.'" (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006))).

### C.     Vocational Expert Testimony

Finally, Plaintiff argues the ALJ erred by posing improper hypotheticals to the vocational expert. (Doc. 12 at 18). Specifically, Plaintiff argues that because the ALJ improperly discounted the evidence discussed above, the questions posed to vocational expert did not adequately set forth all of Plaintiff's limitations. (*Id.*). Because the Court concludes that the ALJ did not err in reaching its determinations, the ALJ did not err in posing its hypothetical questions. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 16th day of April, 2021.

*James A. Teilborg*
Senior United States District Judge